UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| LAVON P. BERTHELOT, DEAN M. BERTHELOT, JON D. BERTHELOT AND SEAN H. BERTHELOT | * * * | CIVIL ACTION NO. 2:17-cv-02140 |
| | * | JUDGE: IVAN L.R. LEMELLE |
| | * | |
| VERSUS | * | MAGISTRATE: DANIEL E. |
| | * | KNOWLES, III |
| | * | |
| ANDREAS FAHL MEDIZINTECHNIK-VERTRIEB GMBH | * * | |

* * * * * * * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF ANDREAS FAHL MEDIZINTECHNIK-VERTRIEB GMBH'S RULE 72 OJBECTIONS TO THE DECEMBER 20, 2017 ORDER OF <u>MAGISTRATE JUDGE KNOWLES</u>**

**MAY IT PLEASE THE COURT**:

Defendant, Andreas Fahl Medizintechnik-Vertrieb GmbH (hereinafter "Fahl"), through undersigned counsel, respectfully submits this Memorandum in Support of its Rule 72 Objections to the December 20, 2017 Order of Magistrate Judge Knowles granting Plaintiffs' Motion to Compel Deposition Appearances.

## I. INTRODUCTION

This is a products liability action. In 2014, Mr. Henry Berthelot began using a Duravent XL Model 11201-07 Tracheostomy Tube manufactured by Fahl, a German medical device manufacturer. Mr. Berthelot required use of a tracheostomy tube in order to maintain his airway which had been damaged as a result of injuries he sustained during his service in Vietnam. On May 16, 2016, Mr. Berthelot purportedly attempted to remove the inner portion of his tracheostomy tube for cleaning but ended up removing the entire tube from his trachea. This allegedly resulted in a compromise of his airway and despite efforts by his wife (and later by EMS

personnel) to restore his normal breathing, he subsequently died.  This lawsuit for wrongful death and survival damages was commenced by the wife and the three sons of Mr. Berthelot on March 17, 2017.  Fahl was later served with process under the provisions of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters concluded on November 15, 1965 (hereinafter "Hague Service Convention"), ratified by the United States of America on April 24, 1967, and by the Federal Republic of Germany (hereinafter "Germany") April 27, 1979, and filed an Answer to the Complaint on June 30, 2017.

Later, on October 11, 2017, counsel for Plaintiffs provided counsel for Fahl with a draft Notice of Video Rule 30(b)(6) Deposition.[1]  Immediately thereafter, Fahl began working to identify the individual within the company who was best-suited to respond to the topics set forth in Plaintiffs' draft notice.  In addition, on October 25, 2017, Fahl provided Plaintiffs a detailed summary of the procedures for taking the depositions of German nationals in Germany.[2]  In particular, counsel for Fahl noted that a "U.S. style" deposition of a German national must, generally, take place at the premises of the U.S. Consulate General in Frankfurt, Germany, and also provided to Plaintiffs information from the U.S. Consulate General in Frankfurt setting forth the procedures for scheduling such depositions.

After receiving this information, counsel for Plaintiffs' responded on October 30, 2017 by characterizing the requirements as "unreasonable" and stating that the procedures would result in "unnecessary" costs and delay but without providing any support for these assertions.[3]  Plaintiffs' then unilaterally indicated their intention to take the deposition in New Orleans or some location

---

[1] See "Exhibit 1_ Plaintiffs' Draft Notice of Video Rule 30(b)(6) Deposition."

[2] See "Exhibit 2_Email from Defendant to Plaintiffs re Hague Requirements" sent on October 25, 2017.

[3] See "Exhibit 3_Email from Plaintiffs to Defendant re Taking Deposition in Location other than Germany" sent on October 30, 2017.

other than Germany – presumably London.[4]  Further, Plaintiffs maintained that, if Fahl would not agree to this unilateral pronouncement, they would file a motion asking the court to require the taking of Fahl's 30(b)(6) deposition in New Orleans.[5]

On November 1, 2017, counsel for Fahl reached out to counsel for Plaintiffs in an attempt to facilitate the scheduling of the deposition of its corporate representative in Germany as permitted by Federal Rule of Civil Procedure 28(b).[6]  Specifically, Fahl offered to produce a 30(b)(6) witness during the week of December 18, 2017 and to have its counsel in Germany "assist in making the necessary arrangements with the Consulate" in order to expedite the process.[7]  The following day, Fahl sent a follow-up email to counsel for Plaintiffs reiterating that the deposition of its corporate representative should take place in Germany and that it would make that person available for deposition during the week of December 18, 2017.[8]  In addition, counsel for Fahl pointed out that the Plaintiffs would likely incur higher costs if the deposition were to occur in London as opposed to Frankfurt or, at a minimum, that the costs would likely be similar regardless of whether the deposition occurred in London or Germany whereas, from Fahl's perspective, holding the deposition in London would significantly increase its costs.[9]  Fahl also offered, for a third time, to "assist in trying to make [the U.S. Consulate process] as seamless as possible."[10]

---

[4] *Id.*  Specifically, Plaintiffs later offered to hold the 30(b)(6) deposition in London, UK but made that offer contingent upon Fahl's agreeing to produce any of its other officers, representatives and witnesses that it intended to call at trial for deposition in New Orleans.

[5] *Id.*

[6] *See* "Exhibit 4_Fahl's Offer to Produce Witness for Week of December 18 & to Assist Plaintiffs with Hague Procedures."

[7] *Id.*

[8] *See* "Exhibit 5_November 2nd Email from Fahl to Plaintiffs re Hague Procedures."

[9] See *Id.*

[10] *Id.*

Plaintiffs refused all these offers and, instead, continued to label the procedure as "unreasonable", "excessively costly" and "time consuming." In addition, instead of considering Fahl's offer, Plaintiffs responded by scheduling a Rule 37(a)(1) conference.[11] When this conference was held, counsel for Fahl again explained the procedures for deposing German nationals under the applicable rules and procedures of public international law between the U.S. and Germany and expressed, once more, that it was willing to assist with trying to expedite that process. Of course, had Plaintiffs agreed back on November 1, 2017 to allow Fahl's counsel in Germany to assist with scheduling the deposition of its corporate representative, that deposition, in all likelihood, would have already been set and this issue mooted.

Thereafter, on November 15, 2017, Plaintiffs' filed a Motion to Compel Deposition Appearances requesting that the Court order Fahl to produce its corporate representative in New Orleans, Louisiana for deposition pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. *See* Rec. Doc. 14. Plaintiffs filed this motion notwithstanding the existence of a specific international legal instrument between the U.S. and Germany setting forth the procedures to be followed in scheduling such a deposition, notwithstanding the well settled rule that the depositions of foreign corporate defendants should be held in the country of the defendant's principal place of business and notwithstanding Plaintiffs' failure to identify any "peculiar" or "unusual circumstances" that would support a departure from the general rule. In the same motion, Plaintiffs moved the Court to compel Fahl to produce any and all witnesses it planned to call at trial for depositions in New Orleans. *Id.* In response, on December 5, 2017, Fahl filed a Memorandum in Opposition to Plaintiffs' Motion to Compel Deposition Appearances. *See* Rec. Doc. 21.

---

[11] *See* "Exhibit 6_November 2nd email from Plaintiffs to Fahl re Rule 37(a)(1) Conference."

An oral hearing was subsequently held before Magistrate Judge Daniel E. Knowles, III on December 13, 2017 during which the parties presented their briefing to the Judge. *See* Rec. Doc. 30. Following the hearing, Magistrate Judge Knowles took the motions under advisement. *Id.* Later, on December 20, 2017, Magistrate Judge Knowles issued a written Order granting the Plaintiffs' Motion to Compel Deposition Appearances which, if upheld, would require Fahl to produce its corporate representative for deposition in New Orleans. *Id.* Magistrate Judge Knowles appeared to rely on the following contentions to support his conclusion, to wit:

- That the Court would not be able to exercise its authority over the depositions "*without impeding another nation's sovereignty*." *See* Rec. Doc. 30 at p. 3;

- That the procedures for conducting a voluntary deposition of a German foreign national at the U.S. Consulate in Germany are "*overburdensome*." *Id.* at p. 10.

- That the "*time constraints imposed by the process*" for taking a voluntary deposition of a German foreign national at the U.S. Consulate would "*jeopardize the trial of this lawsuit*." *Id*;

- That the fact that a foreign corporation is subject to the personal jurisdiction of a federal court, participates in the defense of the claims against it, and freely takes advantage of the U.S. Federal Rules of Discovery is somehow sufficient to allow a court to force the corporation to produce its representatives to give deposition testimony in the U.S. *Id* at pp. 8-9;

- That the existence of procedures allowing "U.S. style" depositions to be conducted in Germany are sufficient to meet the "peculiar" circumstances standard and justify a departure from the "well settled rule" that the deposition of a defendant's

corporate representative should occur at the corporation's principal place of business. *Id* at pp. 6-9;

- That the fact Fahl's outside *counsel* have traveled to New Orleans to participate in proceedings in this lawsuit is somehow relevant to the determination of the location of the Rule 30(b)(6) of Fahl's corporate representative. *Id* at p. 9;

- That Plaintiffs have filed two discovery motions—one of which is at issue here— supports the determination that it is likely that significant disputes requiring resolution by the forum court would arise during Fahl's 30(b)(6) deposition. *Id* at p. 10;

- That the "*German process*" for taking a voluntary deposition of a foreign national at the U.S. Consulate is "*inadequate for an American federal court*" because "*German stenographers do not transcribe depositions verbatim – as required by American la*w." *Id.*

## II.    LAW AND ARGUMENT

Under Federal Rule of Civil Procedure 72, a party may object to a magistrate judge's non-dispositive, pretrial order within fourteen days after being served with a copy of the order. FED. R. CIV. PROC. 72(a).  Such orders include orders adjudicating parties' pretrial discovery motions. *See Liberty Mut. Ins. Co. v. Jotun Paints, Inc., No*. CIV.A. 07-3114, 2008 WL 2510044, at *1 (E.D. La. June 19, 2008) (deciding a Rule 72 appeal of a magistrate judge's discovery order which had denied the defendant's motion for a protective order and/or to quash depositions and subpoenas).

After a timely objection to the magistrate judge's order, the "district judge in the case must consider [the appealing party's] objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." FED. R. CIV. PROC. 72(a).  Courts have held that a ruling

is contrary to law "if the magistrate judge has misinterpreted or misapplied applicable law." *Kounelis v. Sherrer*, 529 F. Supp. 2d 503, 518 (D.N.J. 2008). *See also DeFazio v. Wallis*, 459 F. Supp. 2d 159, 163 (E.D.N.Y. 2006) (holding that a judge's order will be deemed "contrary to law" when it "fails to apply or misapplies relevant statutes, case law, or rules of procedure."). Similarly, a magistrate judge's "finding is clearly erroneous if the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *DeFazio* 459 F. Supp. 2d 159 at 162–63 (citing *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)).

### A.   The Magistrate Judge's Order Fails to Recognize that Agreements Exist Between Germany and the United States Which Allow for "U.S. Style" Depositions Without Impeding the Sovereignty of Germany

In ordering that the deposition of Fahl's corporate representative be held in the United States, Magistrate Judge Knowles noted a concern that the Court might "*not be able to exercise its authority over the depositions without impeding another nation's sovereignty.*" *See* Rec. Doc. 30 at pg. 3. **This is simply incorrect.** Bilateral agreements exist between the U.S. and Germany expressly allow for the taking of non-compulsory depositions of German nationals, residing in Germany, at the premises of the U.S. Consulate General in Frankfurt, Germany. Effective as of October 8, 1956, the U.S. and Germany agreed on the requirements for the taking of depositions of German (and other non-U.S.) nationals through an exchange of diplomatic notes verbale. Specifically, it was agreed that Germany would not object to the questioning of German (or other non-U.S.) nationals as long as such depositions were conducted on the premises of a U.S. consulate in Germany, were non-compulsory, and the deponent was afforded the opportunity to be accompanied by counsel. *See* Note Verbale of the German Ministry of Foreign Affairs 501-511-04/80 12 586/55 III of January 13, 1956, 32 U.S.T. 4181 attached hereto as Exhibit 7. Since the

U.S. granted reciprocity, the law came into effect on the date of this note verbale, i.e. on October 8, 1956.  By notes verbale of October 17, 1979 and February 1, 1980, the U.S. and Germany reconfirmed that voluntary depositions of German nationals may be taken if no compulsion is exercised.

Today, based on these notes verbale, voluntary "U.S. style" depositions of German (or other non-U.S.) nationals can be taken before U.S. consular offices at the premises of the U.S. Consulate General in Frankfurt, Germany.  The voluntary nature of the depositions allowed for by the notes verbale is critical since, in the event that the deponent is not willing to participate voluntarily, the taking of evidence can only be enforced through the Convention on the Taking of Evidence in Civil or Commercial Matters concluded on March 18, 1970 (hereinafter "Hague Evidence Convention"), ratified by the U.S. on August 8, 1972 and ratified by Germany on April 27, 1979.  In contrast to the exchange of notes verbale, the Hague Evidence Convention does not provide for the taking of "U.S. style" depositions.  Moreover, pursuant to Article 9 paragraph 1 of the Hague Evidence Convention, the court conducting a deposition by means of this treaty would apply its own law thus effectively depriving a U.S. Court of any authority over how the deposition would be conducted.

On the other hand, if a deposition is taken pursuant to the exchange of notes verbale at the U.S. Consulate, *it would be a U.S. style deposition pursuant to the Federal Rules of Civil Procedure*.  Thus, depositions taken pursuant to these notes verbale are effectively conducted on U.S. soil.  In this context, this Court would retain its ability to exercise authority over Fahl's 30(b)(6) deposition without in any way impeding on German sovereignty.  Therefore, to the extent that the determination of Magistrate Judge Knowles was motivated by a perceived inability to exercise control over the deposition proceedings held in Germany or that he would somehow be

impeding on German sovereignty, such a determination was patently incorrect.

**B. The Magistrate Judge Erred in Concluding that the Procedures for Conducting Depositions in Germany Would be "Overburdensome"**

Without any clearly articulation of the grounds for his conclusion, Magistrate Judge Knowles summarily determined that "*the burden of conducting a deposition of a German national on German soil is overburdensome.*" Rec. Doc. 30 at p. 10.  While it is true that the U.S. and Germany have agreed upon certain procedures for the scheduling and taking of depositions at the U.S. Consulate General,[12] they are not significantly different than the logistics involved in scheduling any out of town deposition.  The agreed upon procedures require that the parties reserve a date for the deposition six weeks in advance and pay a $1,283 scheduling fee.  As pointed out in Fahl's earlier briefing, this fee is essentially nothing more than a room rental fee which would be incurred if the deposition was to be held at another location. *See* Rec. Doc. 21 at pp. 14-15.  As Fahl further previously noted, the requirement that the deposition must be pre-approved by the German Ministry of Justice is a mere formality and there is no requirement that a consular official remain in the deposition after the initial oath is administered.[13]  In sum, there is nothing overly difficult in complying with this procedure which counsel for Fahl has repeatedly offered to assist counsel for the Plaintiffs to navigate.

Moreover, to the extent that Magistrate Judge Knowles's determination that the procedures are "*overburdensome*" is based on the six week notice requirement, Magistrate Judge Knowles's fear that "*the time constraints imposed by the process [would] jeopardize the trial of this lawsuit*" is no longer valid. *See* Rec. Doc. 30 at p. 10.  As noted in the December 17, 2017 Order, the District

---

[12] These are summarized on the U.S. Embassy Website:   https://de.usembassy.gov/u-s-citizen-services/local-resources-of-u-s-citizens/judicial-assistance/.

[13] *See* Exhibit 8_Affidavit of Anke Meier.

Court has recently granted a continuance of the trial deadlines in this lawsuit. Rec. Doc. 29.  Thus, future deadlines are not jeopardized by the six week advance notice requirement.  In fact, the parties could begin today to initiate the process for scheduling Fahl's 30(b)(6) deposition at the Consulate in February or March of 2018.  Furthermore, the initial deadlines would not have been in jeopardy either, had counsel for Plaintiffs accepted Fahl's repeated offer to conduct the 30(b)(6) deposition of its representative during the week of December 18, 2017.

Finally, it is worth noting that a Federal District Court in the Northern District of Oklahoma considered the exact procedures at issue here and **did not** find them to be sufficiently burdensome to compel German corporate representatives to travel to the United States for a deposition. *Pinnacle Packaging Co., Inc. v. Constantia Flexibles GmbH*, No. 12-CV-537-JED-TLW, 2015 WL 9216845, at *11 (N.D. Okla. Dec. 17, 2015).  The determination of the *Pinnacle Packaging* Court was grounded on the finding that the defendant in that case would also be burdened by incurring "direct out-of-pocket costs associated with sending employees to the United States [and would] also incur indirect costs resulting from unplanned travel to the United States and time out of the office." *Pinnacle Packaging Co., Inc. v. Constantia Flexibles GmbH*, No. 12-CV-537-JED-TLW, 2015 WL 9216845, at *11 (N.D. Okla. Dec. 17, 2015).  <u>**The same situation applies here**</u>.  Thus, Magistrate Judge Knowles erred in determining that the procedures for conducting the voluntary deposition of a German national in Germany are somehow "overburdensome."  If the procedure to schedule a U.S. style deposition in Germany were found *per se* to be sufficiently burdensome to compel German corporate representatives to be deposed in the United States, the general principle that the deposition of a corporate representative at the corporation's place of business would be rendered meaningless.

**C. There are No "Peculiar Circumstances" to Justify a Departure from the General Rule That the Deposition of a Corporation Should be Taken at Its Principal Place of Business**

It is well settled that "the deposition of a corporation by its agents and officers should ordinarily be taken at its principal place of business, especially when . . . the corporation is the defendant" and that plaintiffs must demonstrate that "**peculiar circumstances**" exist in the case to justify a departure from the general rule. *Salter v. Upjohn Co.*, 593 F.2d 649, 652 (5th Cir. 1979) (citations omitted) (internal quotations omitted) (emphasis added). Courts have defined this "well settled rule" as "**an initial presumption that a defendant should be deposed in the district of [its] residence or principal place of business**." *In re Joseph Walker & Co., Inc.*, 472 B.R. 696, 700 (Bankr. D.S.C. 2012) (emphasis added); *See also In re Outsidewall Tire Litig.*, 267 F.R.D. 466, 472 (E.D. Va. 2010) ("[T]his presumption may be overcome, **but only** where circumstances exist distinguishing the case from the ordinary run of civil cases.") (Emphases added). Notably, courts have found that the presumption may apply more forcefully in the context of determining the location for the depositions of foreign defendants. *See Water Quality Ins. Syndicate v. First Bank of Nigeria PLC*, No. CV 09-3751, 2011 WL 13202906, at *3 (E.D. La. May 5, 2011). ("Indeed, insofar as a foreign defendant may be more inconvenienced by having to travel to the United States than a defendant who merely resides in another state or in another judicial district, the presumption that the deposition should occur at a foreign defendant's place of residence may be even stronger."). Therefore, absent some showing by the Plaintiffs of "peculiar" or "unusual" circumstances to distinguish the case from the ordinary run of civil cases, the deposition of Fahl should take place in its home county of Germany.

At the outset, the mere fact that it would be more "convenient" to local counsel for the parties to hold the deposition in the local forum as opposed the principle place of business of the

corporation cannot justify a departure from the general rule.  Rather, the party seeking to have the deposition conducted outside of the home jurisdiction of a corporation must be able to clearly articulate some significant factor to justify a departure from the general rule. *See, e.g.*, *Water Quality Ins. Syndicate v. First Bank of Nigeria PLC*, No. CV 09-3751, 2011 WL 13202906, at *5 (relying on the fact that the United States Department of State had recently "warn[ed] citizens of the risks of travel [to Nigeria] . . . including violent crimes perpetrated by individuals and gangs" to support its determination that it could "not in good faith and in good conscience order United States citizens to travel for a deposition to a country in which they may find their lives in jeopardy."). Here, no such significant factor has been identified.

In this case, Magistrate Judge Knowles seems to suggest that the mere fact that a "foreign corporation is doing business in the United States, is subject to the court's jurisdiction, and has freely taken advantage of our federal rules of discovery" is sufficient to justify a departure from the well-settled general rule. *See* Rec. Doc 30 at pp 8-9.  However, if these factors were determinative, then the limited exception would effectively swallow the general rule since they are likely to be present in virtually every case where a foreign corporation has been made a party and takes appropriate action to defend itself in a U.S. court.  A foreign corporation simply does not give up its right to have the deposition of its corporate representative and/or its employees taken at its principle place of business because it is sued in a United States court.  Accordingly, to the extent that the Magistrate Judge's decision is based on these factors alone, it is clearly erroneous and must be reversed.

Magistrate Judge Knowles further pointed to several cases to support his notion that when a foreign corporation is doing business in the United States, is subject to the court's jurisdiction, and has freely taken advantage of our federal rules of discovery, "exceptions to the general rule on

the location of depositions are often made." *See* Rec. Doc 30 at p. 8.  However, these cases are all plainly distinguishable from the case at bar.  For example, the court in *In re Honda Am. Motor Co., Inc. Dealership Relations Litigation*, found it important the some of the named deponents had "given depositions in the United States on prior occasions" and that the defendant corporation had "conducted extensive business in the United States for a number of years." 168 F.R.D. 535, 539 (D. Md. 1996).  Unlike *Honda*, however, Fahl's proposed corporate deponent has never previously been to the United States for a deposition and Fahl has by no means conducted "extensive" business in the United States.

A similar result was reached in *R.F. Barron Corp. v. Nuclear Fields (Australia) Pty. Ltd*., where the depositions of "foreign nationals" in Chicago was authorized, at least in part, on the fact that they had previously made plans to travel there independently for a convention. No. 91 C 7610, 1992 WL 212602, at *1 (N.D. Ill. Aug. 28, 1992).  No such circumstances are present in the instant case.  Finally, in *Roberts v. Heim*, the defendants took the position that the plaintiffs "must be limited in their discovery to obtaining letters rogatory which can be utilized only through the assistance of Swiss authorities." 130 F.R.D. 430, 435 (N.D. Cal. 1990).  Here, however, U.S. style depositions can be had through the diplomatic notes verbale exchanged between Germany and the United States without any involvement of German authorities except for initial approval by the German Ministry of Justice.  Accordingly, in this case, there is no sufficient justification for requiring Fahl's representative to travel away from his or her home country. *Infra* at §II(B); *See* Rec Doc. 22 at 7, 11-13; *Pinnacle Packaging Co., Inc. v. Constantia Flexibles* GmbH, No. 12-CV-537-JED-TLW, 2015 WL 9216845, at *11 (N.D. Okla. Dec. 17, 2015) (expressly determining that the German procedures at issue in this case "[did] not present [sufficient] circumstances" to compel the depositions of the German corporate representatives in the United States).

In addition, none of these cases cited by the Magistrate Judge state or suggest that by simply registering a product with the FDA, distributing said product in the U.S. market and defending litigation filed against it, a foreign corporation waives its ability to have the deposition of its corporate representative taken in its home country when the corporation has voluntarily agreed to take a "U.S. style" deposition consistent with the U.S. Federal Rules of Civil Procedure in Germany.  Although the Magistrate Judge's Order cites to *Work v. Bier*, in support of the statement that the "bottom line is that a foreign corporation, subject to the personal jurisdiction of this court, can be ordered under the federal rules to produce its officers, directors, or managing agents in the United States to give deposition testimony," the *Bier* Court made this determination *only after* offering the defendants the option to voluntarily agree to the taking of their depositions in Germany, *which Fahl has already done here*. Rec. Doc. 30 at p. 9. *See Work v. Bier*, 106 F.R.D. 45, 52 (D.D.C. 1985) ("If the defendants wish to do so, under conditions which would not implicate German sovereignty, they may voluntarily agree to oral depositions before an American consular official in the Embassy at Bonn, Germany, provided such oral depositions are truly voluntary, are of the same scope as if they were occurring here in the United States, and are done only after notice to the government of the Federal Republic of Germany . . . [i]f the German Government objects [to giving their depositions in Germany voluntarily], the party defendants must appear in the United States for the depositions.").

Accordingly, because Magistrate Judge Knowles's Order fails to identify any peculiar or unusual circumstances sufficient to justify a departure from the well settled rule other than the existence of agreed upon procedures between Germany and the United States for taking the voluntary deposition of a German national and because these procedures cannot themselves constitute a sufficiently peculiar circumstance to depart from the well settled rule without vitiating

the bilateral agreements entered into between the U.S. and Germany, Fahl respectfully suggests that Magistrate Judge Knowles clearly erred in ordering the deposition of Fahl's corporate representative in the United States.

### D. To the Extent that Magistrate Judge Knowles's Order Reaches the Relevant Considerations Under the "Peculiar Circumstances" Standard, the Order Misapplies the Relevant Factors Under that Standard

To the extent that the December 20, 2017 Order does reach the issue of whether "peculiar circumstances" exist in this case, the Order misapplies the applicable law under that standard. First, when determining whether "peculiar circumstances" exist, courts regularly consider whether the **persons to be deposed** often travel for business purposes. *See Armsey* 184 F.R.D. at 570. With respect to this factor, courts have consistently held that the proper inquiry is whether **the deponents** frequently "travel to the proposed location of the depositions" as opposed to "whether the deponents travel for business generally." *See In re Joseph Walker & Co., Inc*., 472 B.R. 696, 702 (Bankr. D.S.C. 2012); *In re Outsidewall Tire Litig*., 267 F.R.D. at 467; *Cadent Ltd. v. 3M Unitek Corp*., 232 F.R.D. 625, 630 (C.D. Cal. 2005).

The December 20, 2017 Order, however, is inappropriately based on the finding that Fahl's "**German counsel often travel here to participate in proceedings in this lawsuit**." Rec. Doc. 30 at p. 9 (emphasis added). That Fahl's German outside counsel (whose practice focuses on U.S.-German business) travel to the United States to participate in a lawsuit for which they were hired to defend Fahl's interests has absolutely nothing to do with whether the deponent frequently travels to the United States, which is the proper inquiry under the applicable jurisprudence.

Second, the Order misapplies the applicable law by failing to consider the burden that Fahl's corporate representative would incur by traveling to New Orleans to take a deposition. In addition to the purely financial costs, courts consider the time that a corporate representative would

spend away from their business when assessing the relative burdens between the parties. *See, e.g.*, *Boss Mfg. Co. v. Hugo Boss AG*, No. 97CIV.8495 (SHS) (MHD), 1999 WL 20828, at *2 (S.D.N.Y. Jan. 13, 1999) (finding that the "relative burdens involved strongly favor[ed] taking [the] depositions of German witnesses in Germany" where the facts indicated that the deponent would have to commit two more days to travel to the United States than he would have had to commit if the depositions occurred in Germany).

In this case, the corporate representative identified by Fahl has never traveled to New Orleans for business purposes or otherwise, has never traveled to the U.S. for business purposes, and she does not have any present intention of doing so in the future. Fahl is a mid-sized, family-owned company where a one-week absence of a member of the top management would severely interfere with the company's ordinary course of business. If Fahl's corporate representative were to be forced to travel to New Orleans, she would have to spend significantly more time away from the office than if the deposition were held in Frankfurt. During this time, Fahl's representative would not be able to attend to the company's business whereas Plaintiffs' counsel would simply be performing one of his job functions by traveling to Germany and taking the deposition. These contrasting burdens are particularly important since the law provides that "the convenience of counsel is less compelling than any hardship to the witnesses." *See Tailift USA, Inc. v. Tailift Co., No.* CIV.A.3:03-CV-0196-M, 2004 WL 722244, at *2 (N.D. Tex. Mar. 26, 2004) (emphases added).

Third, Magistrate Judge Knowles's Order also misapplies the factor involving the "likelihood of significant disputes requiring resolution by the forum court." *See* Rec. Doc. 30 at pp. 9-10. When considering the likelihood of significant discovery disputes requiring resolution by the forum court, courts have held that the "**mere possibility of such disputes does not**

**necessarily weigh in favor of conducting the deposition**" in the forum district. *Tailift USA, Inc. v. Tailift Co., No*. CIV.A.3:03-CV-0196-M, 2004 WL 722244, at *2 (N.D. Tex. Mar. 26, 2004) (emphasis added).

With respect to this factor, the December 20, 2017 Order merely states that "*[g]iven the motions already filed in this lawsuit, this Court also finds that it may need to intervene during the depositions*." *See* Rec Doc. 30 at p. 10.  The Order fails to consider, however, that each of these motions were filed by the Plaintiffs despite several attempts by Fahl to compromise. *See* Rec. Doc. 21 at pp. 2-5; Rec. Doc. 22 at pp 2-4.  If the mere fact of a plaintiff having filed multiple discovery motions was a decisive factor in the peculiar circumstances analysis, plaintiffs would simply be able to unilaterally file motions to create a favorable record in support of their argument that significant discovery disputes would likely arise in a given case.  Perhaps more importantly, however, the Magistrate Judge fails to consider that four (4) depositions had already been taken in this matter prior to the issuance of the December 20, 2017 Order and that these depositions were conducted *without need for judicial intervention*.  Since then, two (2) additional depositions have been taken without need for judicial intervention.  In sum, there is simply no basis on the record to suggest that there would be any need for court intervention during the deposition of Fahl's 30(b)(6) witness.

Accordingly, because Magistrate Judge Knowles's Order (1) inappropriately relies on the fact that Fahl's German outside counsel have traveled to New Orleans to participate in proceedings in this lawsuit, (2) fails to consider the burden that would be imposed on Fahl's corporate representative by having to travel to New Orleans, and (3) heavily relies on the fact that Plaintiffs have unilaterally filed two discovery motions in support of the finding that significant discovery disputes may arise during Fahl's 30(b)(6) deposition without considering that no disputes have

occurred during any of the depositions taken in this litigation to date; the Order misinterprets and misapplies the applicable law.

### E. The December 20, 2017 Order Errs to the Extent that it Concludes that Verbatim Transcriptions of the Testimony of German Witnesses Are Unavailable under the "German Process"

Magistrate Judge Knowles's Order states: "the fact that German stenographers **do not** transcribe depositions verbatim – as required by American law – forces the Court to find the German process inadequate for an American federal court." Rec. Doc. 30 at p. 10 (emphasis added).  This statement, however, is clearly incorrect.  Although the website of the U.S. Consulate states that the "testimony of witnesses **in German court proceedings** is not taken verbatim," this by no means indicates or implies that German stenographers could not or would be prohibited from transcribing depositions verbatim when the depositions are taken voluntarily pursuant to the notes verbale.[14] *Id*. (emphases added).

In fact, the U.S. Consulate website specifically lists the contact information of "U.S. registered professional court reporters", whom would be able to "transcribe depositions verbatim – as required by American law."[15]  Further, the U.S. Consulate website expressly states that it "is the responsibility of the attorney arranging the deposition(s) to make certain the proceedings are recorded and transcribed in accordance with the law of the jurisdiction in which the case is pending."[16]  This statement clearly envisages the verbatim transcription of the depositions of German witnesses (whether taken by German stenographers or otherwise) under the voluntary procedures allowed for by the notes verbale.  Thus, Magistrate Judge Knowles's position regarding

---

[14] https://de.usembassy.gov/u-s-citizen-services/local-resources-of-u-s-citizens/judicial-assistance/.

[15] https://de.usembassy.gov/wp-content/uploads/sites/21/List-Court-Reporters-Videographers-Interpreters-_update-Sep2017.pdf.

[16] https://de.usembassy.gov/u-s-citizen-services/local-resources-of-u-s-citizens/judicial-assistance/.

the unavailability of verbatim deposition transcripts—a position on which he largely bases his Order—is clearly wrong.

Furthermore, the finding that the process for taking depositions in Germany under the notes verbales is "inadequate for an American federal court" flies face of the ruling the *Pinnacle Packing* Court, which considered the precise question at issue here and held that "conducting . . . depositions in Germany" as permitted by the notes verbales would "be as effective" as conducting them in the United States. *Pinnacle Packaging* 2015 WL 9216845, at *11; Rec. Doc. 22 at pp. 10-13.

## III.   CONCLUSION

Magistrate Judge Knowles's December 20, 2017 Order should be reversed because it is contrary to the law and clearly erroneous.  First, to the extent that the Order is based on a finding this Court would not be able to exercise its authority to control Fahl's 30(b)(6) deposition if it were held in Germany, such a finding is clearly wrong.  The Court would retain its authority to control the deposition proceedings if the procedures allowed for by the notes verbales are followed. Second, the Order errs by summarily concluding that the procedures for conducting the voluntary deposition of a German national in Germany are overburdensome.  Third, the Order does not appropriately apply the "peculiar circumstances" standard in that fails to identify the existence of any peculiar circumstances sufficient to justify a departure from the well settled rule as recognized by the Fifth Circuit in *Sattler*.  Fourth, when the Order does touch upon factors related to the applicable standard, the Order misapplies those factors.  Finally, the Order errs in concluding that verbatim transcriptions of the testimony of German witnesses would be unavailable under the procedures for taking the voluntary deposition of German nationals pursuant to the notes verbale. For the foregoing reasons, Magistrate Judge Knowles's December 20, 2017 Order should be set

aside and the Court should enter an Order denying Plaintiffs' Motion to Compel Deposition Appearances.

Respectfully submitted,

IRWIN FRITCHIE URQUHART & MOORE LLC


/s/      Matthew J. Averill
QUENTIN F. URQUHART, JR.  (La. #14475)
MATTHEW J. AVERILL (La. #37020)
400 Poydras Street, Suite 2700
New Orleans, Louisiana 70130
Telephone:  (504) 310-2100
Facsimile:  (504) 310-2101
Email: qurquhart@irwinllc.com
           maverill@irwinllc.com
*Counsel for Andreas Fahl Medizintechnik Vertrieb, GMBH.*


## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of January, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record registered to receive electronic service by operation of the court's electronic filing system.

/s/      Matthew J. Averill